GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER (*Pro Hac Vice*)
   OSnyder@gibsondunn.com
BRIAN C. ASCHER (*Pro Hac Vice*)
   BAscher@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:   212.351.4035

ILISSA SAMPLIN, SBN 314018
   ISamplin@gibsondunn.com
DANIEL NOWICKI, SBN 304716
   DNowicki@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SQUAREHEAD PICTURES, INC. f/s/o DAVID ERICKSON,<br><br>                     Plaintiff,<br><br>          v.<br><br>AMC NETWORKS INC., AMC FILM HOLDINGS LLC, CROSSED PENS DEVELOPMENT LLC, and DOES 1-20, inclusive,<br><br>                     Defendants. | CASE NO. 2:26-cv-00626-FLA-AJR<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS**<br><br>Action Filed:      Nov. 19, 2025<br><br>Hearing Date:     May 8, 2026<br>Hearing Time:     1:30 p.m.<br>Hearing Place:    Courtroom 6B |

Gibson, Dunn & Crutcher LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 8, 2026, at 1:30 p.m., or as soon as the matter may be heard before the Honorable Fernando L. Aenlle-Rocha of the United States District Court for the Central District of California, 350 West 1st Street, Los Angeles, California 90012, Courtroom 6B, Defendants AMC Networks Inc., AMC Film Holdings LLC, and Crossed Pens Development LLC (together, "AMC") move for an order dismissing Plaintiff Squarehead Pictures, Inc. f/s/o David Erickson's ("Erickson") complaint to the extent his claims depend on allegations and seek relief that are contrary to the plain language of his contract.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on February 13, 2026 at 3:00 pm PT, where the Parties were unable to resolve their dispute.

Dated:  February 20, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  _/s/ Ilissa S. Samplin_
         Ilissa S. Samplin

Attorneys for Defendants

DEFENDANTS' PARTIAL MOTION TO DISMISS
CASE NO. 2:26-CV-00626-FLA-AJR

Gibson, Dunn & Crutcher LLP

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................... 1

II. BACKGROUND ...................................................................................................... 1

    A.    Erickson is a sophisticated entertainment professional who negotiated a written agreement with AMC for his work on *Fear the Walking Dead*. ......................................................................................... 1

    B.    Erickson and AMC enter into an amended agreement in 2016 that contained an imputed license fee ................................................................. 2

    C.    Erickson initiates this lawsuit to seek a benefit he did not bargain for. ......................................................................................................... 3

III. LEGAL STANDARD ............................................................................................. 3

IV. ARGUMENT ........................................................................................................... 4

V. CONCLUSION ......................................................................................................... 8

DEFENDANTS' PARTIAL MOTION TO DISMISS
CASE NO. 2:26-CV-00626-FLA-AJR

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................3

*Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*,
212 F. Supp. 2d 233 (S.D.N.Y. 2002 .....................................................................4

*Darabont v. AMC Network Entm't LLC*,
193 A.D.3d 500 (N.Y. App. Div. 2021) .................................................................7

*Ferguson v. Lion Holding, Inc.*,
478 F. Supp. 2d 455 (S.D.N.Y. 2007) ................................................................4, 7

*Gemsa Enters., LLC v. Pretium Packaging, LLC*,
2021 WL 4551200 (C.D. Cal. July 27, 2021) ........................................................4

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp.3d 911 (N.D. Cal. 2024)......................................................................1

*Great Minds v. Office Depot, Inc.*,
945 F.3d 1106 (9th Cir. 2019) ................................................................................4

*Keene Corp. v. Bogan*,
1990 WL 1864 (S.D.N.Y. Jan. 11, 1990) ...............................................................5

*Monaco v. Bear Stearns Residential Mortg. Corp.*,
554 F. Supp. 2d 1034 (C.D. Cal. 2008)..................................................................4

*Quadrant Structured Prods. Co. v. Vertin*,
23 N.Y.3d 549 (2014)..............................................................................................8

*Reiss v. Fin. Performance Corp.*,
97 N.Y.2d 195 (2001)..............................................................................................8

*Rowe v Great Atl. & Pac. Tea Co.*,
46 N.Y.2d 62 (1978)................................................................................................7

*Staffenberg v Fairfield Pagma Assoc.*,
L.P., 95 A.D.3d 873 (N.Y. App. Div. 2012) ..........................................................7

Gibson, Dunn & Crutcher LLP

iii

*Teachers Ins. and Annuity Ass'n of Am. v. Wometco Enters., Inc.*,
  833 F. Supp. 344 (S.D.N.Y. 1993) ........................................................................... 5

**Rules**

Federal Rule of Civil Procedure 12 ............................................................................... 1

Gibson, Dunn &
Crutcher LLP

iv

## I.    INTRODUCTION[1]

Plaintiff David Erickson is an experienced television producer who, represented by sophisticated entertainment counsel, spent years negotiating the terms of his detailed contract with AMC governing his work and compensation in connection with the television show *Fear The Walking Dead*.  That agreement expressly defines in detail the parties' obligations and rights regarding Erickson's compensation related to *Fear The Walking Dead*.  Now, years later, because the show became a bigger hit than anyone could have imagined, he asks this Court to rewrite the contract he signed to award him compensation he did not negotiate for and that AMC did not agree to provide.  But courts enforce contracts as written—they do not revise them after the fact to grant one party a better deal.  Several of Erickson's claims depend on imposing obligations that directly contradict the express terms of the contract.  Because those claims are contrary to the plain and unambiguous terms of the contract, they should be dismissed.

## II.    BACKGROUND

### A.    Erickson is a sophisticated entertainment professional who negotiated a written agreement with AMC for his work on *Fear the Walking Dead*.

Plaintiff David Erickson served as lead executive producer for the first three seasons of *Fear the Walking Dead* ("*Fear*" or the "Series"), which AMC produced and aired from 2015 until 2023.  *See* Dkt. 1-2 (Compl.) ¶ 1, 6.  Erickson is no stranger to the entertainment industry.  *See id.* at ¶ 20.  Before working on the Series, Erickson created

---

[1] This case should not be in this Court because the parties' contract contains a mandatory arbitration provision, which requires that all disputes regarding arbitrability be submitted to the arbitrator.  For that reason, Defendants filed a Motion to Compel Arbitration. Dkt. 23.  That motion to compel arbitration should be considered before this motion—and if the motion to compel arbitration is granted, the Court will not need to address this motion or the merits of this case at all.  Defendants, however, are filing the instant motion out of an abundance of caution because today (February 20, 2026) is the deadline for Defendants to respond to the Complaint, and Plaintiff declined to agree to extend that deadline pending resolution of the motion to compel arbitration.  Filing a motion to dismiss concurrently with a motion to compel arbitration "does not constitute a waiver" of Defendants' right to arbitrate. *See Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 920-21 (N.D. Cal. 2024) (finding no waiver where party moved to compel arbitration *after* it moved to dismiss "on substantive grounds," because "it was required to present all arguments—jurisdictional and merit-based—under Rule 12(g) or risk waiving Rule 12 defenses").

Gibson, Dunn & Crutcher LLP

a television series and wrote and produced more than dozens of episodes for other successful series. *Id.*

Before agreeing to his *Fear* contract, Erickson negotiated extensively with AMC over the course of several years, with Erickson represented the entire time by highly sophisticated agents and entertainment lawyers. In 2013, AMC approached Erickson to "showrun the Series." *Id.* at ¶ 29. After a year of discussion, in 2014, Erickson's company, Squarehead Pictures, entered into a carefully negotiated contract with AMC for his work on the Series. *See id.* at ¶¶ 35–40.

**B.     Erickson and AMC enter into an amended agreement in 2016 that contained an imputed license fee**

In 2016, AMC and Erickson revisited the contract and entered into further negotiations. Compl. ¶ 41. The parties ultimately agreed to an amended contract, which took effect in July 2016. *Id.* The 2016 amendment entered into by the parties, like the 2014 contract, designates New York law as the governing law. *See* Compl. Ex. 1 at 2. The contract provided that Erickson would be entitled to a percentage of the show's "Modified Adjusted Gross Receipts," also known as "MAGR." *See* Compl. ¶ 3. This participation in the MAGR of a show is what is commonly called "profit participation." MAGR is a pool of certain revenue from a show minus certain expenses that is set out in a document called a "MAGR definition." *See id.* Erickson and AMC agreed that AMC's "standard [MAGR] definition shall apply." *Id.*, Ex. 1 at Ex. A § 10(a). Importantly, Erickson also agreed that AMC's standard MAGR definition "shall be modified as necessary to provide for the following," with the "following" being a few specific, negotiated MAGR definition elements. *Id.*

One of those specifically-negotiated terms was the "imputed license fee for exhibitions on AMC in US/Canada." Compl., Ex. 1 at Ex. A § 10(a)(iii). As Plaintiff alleges, "[a]n imputed license fee is a contractually defined amount that the studio is deemed to have received from its sister network for its license for the purpose of accounting to profit participants on a given series." *Id.* ¶ 57 n.7. The imputed license

fee is a revenue item that gets added into the *Fear* MAGR pot for purposes of calculating Erickson's contingent compensation. The imputed license fee provision in Erickson's contract is clear and unambiguous and states that the imputed license fee is calculated pursuant to a specific formula: 65% of the "Cost of Production" of the show, up to a defined cap of $1.45 million per episode, with the cap increasing by 5% for each season of the show. *Id.*, Ex. 1 at Ex. A § 10(a)(iii). The imputed license fee provision also expressly states that these terms are "the result of an arms-length negotiation," are "binding," and are "not subject to any further negotiation, modification or adjustment." *Id.*

## C.    Erickson initiates this lawsuit to seek a benefit he did not bargain for.

Erickson now claims that AMC breached his contract and/or the implied covenant of good faith and fair dealing by not using a *different* imputed license fee than the one he expressly agreed would be used for purposes of calculating his MAGR participation. Erickson claims AMC breached the contract's implied covenant of good faith and fair dealing by, among other things, (i) not capping the show's production costs (to match the imputed license fee cap), (ii) not including "breakage," (iii) not imputing an "all-cost license fee" (i.e., one that is 100% of production costs, instead of 65% of those costs), and (iv) not imputing additional license fees for more than a certain number of "runs" or "exhibitions" of *Fear*. Compl. ¶¶ 57-58. But the imputed license fee provision in the contract Erickson negotiated and signed requires none of these things. *See id.*, Ex. 1 at Ex. A § 10(a)(iii). Erickson's claims find no support in the contract's text. He is asking this Court to impose on AMC new obligations that are inconsistent with the contract he negotiated and signed, through the back door of an implied covenant claim. This gambit is barred as a matter of law.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A plaintiff must "plead[]

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court "finds that plaintiff did not allege sufficient facts to … support a cognizable legal theory, it may dismiss the complaint as a matter of law." *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1109 (9th Cir. 2019). The interpretation of an unambiguous contract is a matter of law appropriate for resolution on a motion to dismiss. *See Gemsa Enters., LLC v. Pretium Packaging, LLC*, 2021 WL 4551200, at *4 (C.D. Cal. July 27, 2021) ("[I]n a breach of contract claim, '[r]esolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous.'" (quoting *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008))).

## IV.   ARGUMENT

Erickson's Complaint should be dismissed to the extent his claims depend on allegations that contradict or would add obligations to the express terms of his contract.

Erickson's implied covenant claim alleges that AMC "has exercised its discretion to 'interpret' the imputed license fee" term of his MAGR definition "in a self-serving and unreasonable manner." Compl. ¶ 68. However, four of the apparent bases for this claim—(i) that AMC imposed a cap on the imputed license fee "but not the corresponding costs," (ii) that AMC did not include "breakage" in the imputed license fee that networks typically pay to studios for hit shows, (iii) that AMC did not impute an all-cost license fee beginning in Season 5 or 6, *id.* ¶ 57, and (iv) that AMC did not limit the number of runs covered by the imputed license fee, *id.* ¶ 58—fail as a matter of law because they conflict with, and purport to add material new obligations to, the unambiguous text of the parties' agreement. Further, to the extent these allegations are also intended to support Erickson's breach of contract and declaratory relief claims, these portions of those claims fail for the same reason.

A party may not invoke the implied covenant to have the Court "create an additional benefit for which [the parties] did not bargain." *Ferguson v. Lion Holding, Inc.*, 478 F. Supp. 2d 455, 479 (S.D.N.Y. 2007) (*quoting Bronx Chrysler Plymouth, Inc.*

*v. Chrysler Corp.*, 212 F. Supp. 2d 233, 250 (S.D.N.Y. 2002)). "Even if an implied covenant does not directly contradict terms of the contract, it cannot be used to add wholly new terms to the contract." *Keene Corp. v. Bogan*, 1990 WL 1864, at *14 (S.D.N.Y. Jan. 11, 1990).

Here, the provision of Erickson's contract governing the calculation of the imputed license fee does not contain or imply any of the obligations that Erickson claims AMC breached. The contract is crystal clear as to what the imputed license fee will be:

> imputed license fee for exhibitions on AMC in US/Canada for Season 1 shall be **65% of the "Cost of Production"** with **a cap of $1.45 million/per episode** (cumulative seasonal **bumps on the cap of 5%** for subsequent seasons) ($3 million cap for a Pilot)($1.1 million/episode cap if premiere on affiliate other than AMC).

Compl., Ex. 1 at Ex. A § 10(a)(iii) (emphases added). This unambiguous language dictates what the impute license fee will be and how it will be calculated:

- it will be 65% of the "Cost of Production" of the show, with the only "cap" being that it will not exceed $1.45 million per episode or $3 million for the pilot (i.e., the first episode); and

- the cap will increase each season of the show, but only by 5%.

The provision specifically recognizes that for purposes of calculating Erickson's MAGR participation, these imputed license fees "(i) are the result of an arms-length negotiation between Company and Lender, (ii) are binding, [and] (iii) are not subject to any further negotiation, modification or adjustment." *Id.*

Erickson cannot claim AMC was required to calculate the imputed license fee differently than the parties expressly agreed. *See, e.g.*, *Keene*, 1990 WL 1864, at *14; *Teachers Ins. and Annuity Ass'n of Am. v. Wometco Enters.*, *Inc.*, 833 F. Supp. 344, 349 (S.D.N.Y. 1993) (rejecting implied covenant claim imposing new obligation because "the Court cannot and should not rewrite the contract to include . . . language which neither of the parties saw fit to insert in the contract").

***No cap on production costs.*** Erickson says AMC breached the implied covenant by not imposing a cap on production costs (an expense deducted from the MAGR

calculation) while capping the imputed license fee (a revenue item added to the MAGR calculation). Compl. ¶ 57. But the imputed license fee provision the parties agreed to requires no cap on anything besides the imputed license fee itself, and nothing else in the contract even hints at a cap on production costs. In fact, the parties expressly negotiated and agreed to certain aspects of the "Cost of Production" element of the MAGR definition, but said nothing about any cap on those costs. *See* Compl., Ex. 1 ¶ 10(a)(v) (agreement that the "Cost of Production" element of the MAGR definition would not include as an expense monies paid to other profit participants). Since the parties considered a cap and decided it should apply to the imputed license fee only, and not to "Cost of Production," Plaintiff's claim that AMC was also required to impose a cap on "Cost of Production" fails as a matter of law.

*No breakage requirement.* Erickson suggests AMC breached the implied covenant by not adding "breakage" (i.e., additional money) to the imputed license fee when calculating MAGR. Compl. ¶ 57. Erickson alleges "breakage" is "typically pa[id]" "for hit shows" as "another way networks and studios split the costs of an expensive series," and that AMC should have imputed "millions of dollars in breakage" along with the imputed license fees. *Id.* ¶ 57 & n.7. But the contract says nothing about "breakage" at all, let alone that it must be added the MAGR pool with the imputed license fee.

*No "all-cost license fee" requirement.* Erickson says AMC breached the implied covenant by not changing the imputed license fee—which is set in the contract at 65% of Production Costs—to an "all-cost license fee" in season five or six of *Fear*. Compl. ¶ 57. Again, the contract says nothing about using an "all-cost license fee" in season five, six, or at any other point. And such a requirement would contravene the parties' express agreement that the imputed license fee is set at 65% of the Cost of Production (*not* 100% of costs), up to a cap.

*No limit on number of runs.* Finally, Erickson complains that AMC "failed to limit the number of runs" for the imputed license fee, meaning that he thinks AMC

should have agreed that the imputed license fee would increase if the show was aired (or "ran") multiple times.  Compl. ¶ 58.  But again, the contract does not say anything like this.  The imputed license fee provision in the contract says that the fee "for exhibition**s** on AMC" will be 65% of the Cost of Production, without any limitation on the number of runs.  Compl., Ex. 1 ¶ 10(a)(iii) (emphasis added).  The provision unambiguously provides that the imputed license fee covers *all* "exhibitions."  Erickson's claim that AMC breached the contract by not using a different imputed license fee for exhibitions beyond a "limit[ed] . . . number of runs," Compl. ¶ 58, contravenes the contract's express terms.

Because each of these alleged breaches of the implied covenant would add new obligations to the contract, and conflict with the express terms therein, they fail as a matter of law and should be dismissed.  *Staffenberg v Fairfield Pagma Assoc.*, L.P., 95 A.D.3d 873, 875 (N.Y. App. Div. 2012) (affirming summary judgment of implied covenant claim because contract permitted conduct at issue and no other obligation regarding that conduct could be implied from contract's text); *Darabont v. AMC Network Entm't LLC*, 193 A.D.3d 500, 500 (N.Y. App. Div. 2021) (rejecting implied covenant claim to the extent it "improperly seeks to impose obligations on AMC beyond the express terms of the parties' agreement"); *Ferguson*, 478 F. Supp. 2d at 480 (rejecting implied covenant claim "invoked … for the purpose of creating a new right [plaintiffs] do not have under their contracts").

To the extent Plaintiff relies on the allegations discussed above and contained in paragraphs 57 and 58 of the Complaint in support of his claims for breach of contract (Count I) or declaratory relief (Count II), the allegations cannot sustain those claims for essentially the same reasons they cannot sustain an implied covenant claim.  Where, as here, a contract was negotiated between sophisticated parties, "courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include."  *Rowe v Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 72 (1978).  Since the parties considered a cap and decided it should apply to

Gibson, Dunn &
Crutcher LLP

the imputed license fee only, Plaintiff's claim that AMC was also required to impose a cap on "Cost of Production" fails.  And since the contract says nothing about breakage or an all-cost license fee, and does not limit the imputed license fee to only a certain number of runs or exhibitions of the show,  Plaintiffs cannot state a claim for a breach of contract or declaratory relief regarding those allegations either. *See Quadrant Structured Prods. Co. v. Vertin*, 23 N.Y.3d 549, 560 (2014) ("[I]f parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission."); *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (2001) ("[T]his Court will not imply a term where the circumstances surrounding the formation of the contract indicate that the parties, when the contract was made, must have foreseen the contingency at issue and the agreement can be enforced according to its terms.").

If the Court declines to compel arbitration or stay, transfer, or dismiss the action pending AMC's motion to compel arbitration in New York, dismissal of Erickson's implied covenant, breach of contract, and declaratory relief claims is appropriate to the extent those claims are premised on the allegations contained in paragraphs 57 and 58 of the Complaint.

## V.  CONCLUSION

Portions of Plaintiff's claims are barred by the plain language of the contracts he negotiated and signed.  This Court should dismiss the portions of Plaintiff's implied covenant, breach of contract, and declaratory relief claims premised on the allegations in paragraph 57 and the first sentence of paragraph 58 of the Complaint with prejudice.

Dated:  February 20, 2026                     Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By:   */s/ Ilissa S. Samplin*
                 Ilissa S. Samplin
                 Attorneys for Defendants

DEFENDANTS' PARTIAL MOTION TO DISMISS
CASE NO. 2:26-CV-00626-FLA-AJR

Gibson, Dunn & Crutcher LLP

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants AMC Networks Inc., AMC Film Holdings LLC, and Crossed Pens Development LLC certifies that this brief contains 3,125 words, which complies with the word limit of L.R. 11-6.1.


DATED:  February 20, 2026          GIBSON, DUNN & CRUTCHER LLP

                                   By: /s/ Ilissa S. Samplin
                                       Ilissa S. Samplin

                                   Attorneys for Defendants