KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
AARON C. LISKIN (SBN 264268)
  aliskin@khiks.com
NICHOLAS C. SOLTMAN (SBN 277418)
  nsoltman@khiks.com
11766 Wilshire Boulevard, Suite 750
Los Angeles, California 90025
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Plaintiff Squarehead
Pictures, Inc. f/s/o David Erickson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SQUAREHEAD PICTURES, INC. f/s/o DAVID ERICKSON,<br><br>Plaintiff,<br><br>vs.<br><br>AMC NETWORKS INC., AMC FILM HOLDINGS LLC, CROSSED PENS DEVELOPMENT LLC, and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 2:26-cv-00626-FLA-AJRx (Related to Case No. 2:26-cv-00626-AB-PVCx)<br><br>*Assigned to Hon. Fernando L. Aenlle-Rocha*<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date:       March 20, 2026<br>Time:       1:30 p.m.<br>Place:      Courtroom 6B<br><br>Action Filed:   November 19, 2025<br>Trial Date:     None Set |

30789-00003/935068

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION .................................................................................................. 8

II.     FACTUAL BACKGROUND ................................................................................ 9

        A.      The 2014 Agreement Setting Forth Erickson's Contingent Compensation Provides for Disputes To Be Resolved in State or Federal Court ........................................................................................... 9

        B.      The 2016 Amendment *Also* Provides for Disputes To Be Resolved in State or Federal Court ...................................................... 10

        C.      AMC's Attempt To Add An Arbitration Requirement in 2022 Was Summarily Rejected by Erickson ................................................ 11

        D.      AMC's Evidence Of Erickson's Purported "Knowledge" of Its "Standard" MAGR Definition Is Based on a *Different* Participant's *Disputed* Definition on a *Different* Show ........................ 12

III.    THE COURT SHOULD DENY AMC'S MOTION ..................................... 14

        A.      The Court, and Not An Arbitrator, Must Decide Whether the Parties Agreed To Arbitrate Disputes Regarding the Series ............... 15

                1.      The Agreements neither include nor incorporate by reference an arbitration provision or delegation clause.............. 16

                        (a)     *The 2022 MAGR Definition was not "identified beyond all reasonable" doubt in the 2014 and 2016 Agreements.* ...................................................................... 17

                        (b)     *Erickson could not have "assented" to the terms of the MAGR Definition eight years before AMC provided it.*......................................................................... 18

                2.      None of the delegation cases relied on by AMC are analogous. ................................................................................... 20

        B.      AMC's Interpretation of the Actual Dispute Resolution Provision Leads to Absurd Results—As Its Own Litigation History Demonstrates.......................................................................... 21

        C.      The Arbitration Clause Cannot Be Enforced for Another Reason: If It Became Part of the Agreements, It Was Procured by Fraud ......... 24

IV.     CONCLUSION .................................................................................................... 27

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

30789-00003/935068

2

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*,
  21 F.4th 631 (9th Cir. 2021) ......................................................................... 15, 16

*Bielski v. Coinbase, Inc.*,
  87 F.4th 1003, 1009 (9th Cir. 2023) ................................................................. 15

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ........................................................... 15, 20, 21

*Buckeye Cellulose Corp. v. Atl. Mut. Ins. Co.*,
  643 F. Supp. 1030 (S.D.N.Y. 1986) .................................................................. 23

*Caleb & Co. v. E.I. DuPont De Nemours & Co.*,
  624 F. Supp. 747 (S.D.N.Y. 1985) .................................................................... 23

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*,
  117 F.3d 655 (2d Cir. 1997) ........................................................................ 26, 27

*CBS Corp. v. Northrop Grumman Corp.*,
  53 F. Supp. 2d 629 (S.D.N.Y. 1999) ................................................................. 23

*CollegeStreet Imp. & Exp. (Tianjin) Co. v. TL x HF, LLC*,
  777 F. Supp. 3d 238 (S.D.N.Y. 2025) ............................................................... 21

*Cornell v. Desert Fin. Credit Union*,
  2021 WL 4710173 (D. Ariz. Oct. 8, 2021) .................................................. 16, 21

*Fairfield-Noble Corp. v. Pressman-Gutman Co.*,
  475 F. Supp. 899 (S.D.N.Y. 1979) .................................................................... 25

*Goceri v. Amazon.com, Inc.*,
  719 F. Supp. 3d 1060 (N.D. Cal. 2024)........................................................ 15, 16

*Goldman, Sachs & Co. v. City of Reno*,
  747 F.3d 733 (9th Cir. 2014) ............................................................................ 16

*Granite Rock Co. v. Int'l Broth. of Teamsters*,
  561 U.S. 287 (2010) ......................................................................................... 16

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

30789-00003/935068

3

*Hill v. Quicken Loans Inc.*,
  2020 WL 5358394 (C.D. Cal. Aug. 5, 2020) ..................................................... 14

*Jackson v. Airbnb, Inc.*,
  639 F. Supp. 3d 994 (C.D. Cal. 2022) .............................................................. 20

*Johnson v. Green Dot Corporation*,
  2021 WL 2945533 (C.D. Cal. Jul. 8, 2021) ...................................................... 14

*Kirkman v. AMC Film Holdings LLC*,
  No. 2:22-cv-09101-FLA-AJR (C.D. Cal. filed Dec. 15, 2022) ........................ 13

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*,
  845 F.3d 979 (9th Cir. 2017) ............................................................................ 15

*Lamb v. Emhart Corp.*,
  47 F.3d 551 (2d Cir. 1995) ............................................................................... 19

*Law Enf't Sys., Inc. v. Am. Express Co.*,
  2006 WL 2034435 (E.D.N.Y. July 17, 2006) ................................................... 25

*Legacy Cap. 26, LLC v. Chaldean Enter., LLC*,
  2023 WL 5530307 (S.D.N.Y. Aug. 28, 2023) .................................................. 26

*Lenox Corp. v. Blackshear*,
  226 F. Supp. 3d 421 (E.D. Pa. 2016) ................................................................ 21

*McFarlane v. Altice USA, Inc.*,
  524 F. Supp. 3d 264 (S.D.N.Y. 2021) .............................................................. 22

*Morgan v. Sundance, Inc.*,
  596 U.S. 411 (2022) .......................................................................................... 21

*Moseley v. Electronic Facilities*,
  374 U.S. 167 (1963) ............................................................................... 24, 26, 27

*Norcia v. Samsung Telecomm'ns Am., LLC*,
  845 F.3d 1279 (9th Cir. 2017) ........................................................................ 9, 14

*O'Connor v. Warner Bros. Animation, Inc.*,
  2021 WL 3598581 (C.D. Cal. Jan. 21, 2021) .................................................... 20

*PaineWebber Inc. v. Bybyk*,
  81 F.3d 1193 (2d Cir. 1996) ............................................................................. 17

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

30789-00003/935068

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

*Patrick v. Running Warehouse, LLC*,
   2022 WL 10584136 (C.D. Cal. Oct. 18, 2022) ...............................................20, 21

*Pike Company, Inc. v. Tri-Krete Limited*,
   772 F. Supp. 3d 353 (W.D.N.Y. 2025) ...........................................................18, 19

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) ...............................................................................................24

*Regents of Univ. of Cal. v. Japan Sci. & Tech. Agency*,
   2014 WL 12690187 (C.D. Cal. Oct. 16, 2014) ....................................................14

*Rosen v. Waldman*,
   1993 WL 403974 (S.D.N.Y. Oct. 7, 1993) ...........................................................25

*Sanford v. MemberWorks, Inc.*,
   483 F.3d 956 (9th Cir. 2007) ................................................................................14

*Sea Trade Co. Ltd. v. FleetBoston Financial Corp.*,
   2007 WL 1288592 (S.D.N.Y. May 1, 2007)..........................................................17

*Segui v. Solar Mosaic, LLC*,
   802 F. Supp. 3d 545 (S.D.N.Y. 2025) ..................................................................24

*Simmons v. SUNco Capital, LLC*,
   2025 WL 711724 (E.D.N.Y. Mar. 5, 2025) ..........................................................24

*Torres v. Major Auto. Grp.*,
   2014 WL 4802985 (E.D.N.Y. Sep. 25, 2014) .......................................................17

*Totten v. Kellogg Brown & Root, LLC*,
   152 F. Supp. 3d 1243 (C.D. Cal. 2016)................................................................14

*Valley Stream Foreign Cars, Inc. v. Am. Honda Motor Co.*,
   209 F. Supp. 3d 547 (E.D.N.Y. 2016)............................................................17, 18

*Winkler v. McCloskey*,
   83 F.4th 720 (9th Cir. 2023)................................................................................16

*Young v. ByteDance Inc.*,
   700 F. Supp. 3d 808 (N.D. Cal. 2023)................................................................21

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

30789-00003/935068

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

**California Cases**

*Gilbert Street Developers, LLC v. La Quinta Homes, LLC*,
174 Cal. App. 4th 1185 (2009).................................................................................18

*Kirkman, et al. v. AMC Film Holdings LLC, et al.*,
No. BC672124 (L.A. Super. Ct. filed Aug. 14, 2017) .....................................13

**Other State Cases**

*Aerotech World Trade Ltd. v. Excalibur Sys., Inc.*,
654 N.Y.S.2d 386 (App. Div. 1997) ...............................................................16

*Darabont, et al. v. AMC Network Entertainment LLC, et al.*,
Index No. 650251/2018 (N.Y. Sup. Ct. filed Jan. 18, 2018)........................12, 13

*Darabont, et al. v. AMC Network Entertainment LLC, et al.*,
Index No. 654328/2013 (N.Y. Sup. Ct. filed Dec. 17, 2013)...........................12

*Greenwich Capital Fin. Prods., Inc. v. Negrin*,
74 A.D.3d 413 (App. Div. 2010)....................................................................22

*Housing Auth. of City of Hartford v. McKenzie*,
412 A.2d 1143 (Conn. Super. Ct. 1979)........................................................19

*Info. Sciences, Inc. v. Mohawk Data Science Corp.*,
56 A.D.2d 706 (App. Div. 1977)....................................................................24

*Kenner v. Avis Rent A Car Sys., Inc.*,
678 N.Y.S.2d 213 (App. Div. 1998) ...............................................................17

*Matter of Marlene Indus. Corp. v. Carnac Textiles, Inc.*,
380 N.E.2d 239 (N.Y. 1978) ..........................................................................26

*S & T Sportswear Corp. v. Drake Fabrics, Inc.*,
190 A.D.2d 598 (App. Div. 1993)..............................................................25, 26

*Swersky v. Dreyer & Traub*,
219 A.D.2d 321 (App. Div. 1996)...................................................................25

*Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., Inc.*,
251 P.3d 1091 (Colo. App. 2010)...................................................................18

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

*TD Auto Fin. LLC v. Reynolds*,
842 S.E.2d 783 (W.Va. 2020) ............................................................... 18, 19, 22

**Federal Statutes**

Federal Arbitration Act ........................................................................ 14

**Other Authorities**

*Corbin on Contracts* (1960) § 558 ........................................................... 23

11 *Williston on Contracts* § 30:25 (4th ed.) ............................................... 17

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

## I.      INTRODUCTION

Plaintiff Dave Erickson negotiated not one, but two agreements with AMC: one in 2014, one in 2016. By this time, AMC was already embroiled in contentious *state court* litigation with Frank Darabont, creator and showrunner of *The Walking Dead*, and Creative Artists Agency, his (and other key talent's) agency, over AMC's accounting on that series. It was also in pre-litigation negotiations with that series' other producers, including Robert Kirkman; they would file their own state court suit in 2017. Nonetheless, AMC and Erickson agreed that any disputes would be resolved in "state or federal court." Not only that: AMC never even *asked* Erickson to arbitrate disputes during those negotiations.

Now, AMC seeks to shunt this action to arbitration, based on a document it did not provide—and may not have even *drafted*—until *2022*, in response to a request by Erickson's *litigation counsel*. The 2022 draft MAGR definition was the first time AMC had ever even raised the prospect of arbitration with Erickson. Because the arbitration provision therein conflicted with the underlying agreements, Erickson's representatives rejected the gambit.

This is—or should be—the end of the matter. Erickson never agreed to arbitrate, period. Nor did he agree that an arbitrator could decide disputes about arbitrability. Contrary to AMC's arguments, Erickson's agreements could not, and did not, "incorporate by reference" a definition first provided to him six years later. As discussed below, to incorporate a document by reference, it must be identified "beyond all reasonable doubt," and the parties must have knowledge of—and assent to—the incorporated terms. It is impossible to satisfy either requirement unless and until the "incorporated" document actually exists. This interpretation is confirmed by AMC's own conduct in three other *Walking Dead* cases in which it did not seek to compel arbitration, notwithstanding substantively identical later-provided JAMS arbitration clauses. But even if Erickson's 2014 and 2016 agreements somehow "incorporated" the 2022 (draft) MAGR Definition, the arbitration provision therein

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

would still be unenforceable. AMC never disclosed its intent to add a conflicting arbitration provision. As a matter of law, that is a fraudulent omission preventing enforcement of the arbitration provision.

AMC has not come close to meeting its burden to prove the existence of a valid arbitration agreement by a preponderance of the evidence. *Norcia v. Samsung Telecomm'ns Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). Its motion should be denied.

## II. FACTUAL BACKGROUND

*The Walking Dead* premiered on AMC network on Halloween in 2010. It was such a historic success that AMC quickly decided to expand *The Walking Dead* universe with *Fear the Walking Dead* (the "Series"). Because the key talent from *The Walking Dead* were still largely focused on the original series, AMC came to Dave Erickson to co-create and run the new Series. Erickson originally rejected AMC's approach, but Erickson was ultimately convinced to take the role in no small part due to the potential for future riches if the Series was a hit.

Relevant here, as discussed below, during the entire course of the negotiations of his agreements, AMC never once requested that Erickson agree to submit disputes to arbitration. To the contrary, the parties repeatedly agreed that any disputes would be in state or federal court.

### A. The 2014 Agreement Setting Forth Erickson's Contingent Compensation Provides for Disputes To Be Resolved in State or Federal Court

Erickson's original agreement to serve as the co-creator and initial showrunner on the Series, the 2014 Agreement (Stein Decl. Ex. 1), is 27 pages long. The Deal Memorandum specified Erickson's guaranteed compensation, entitled him to 5% of 100% of AMC's profits on the "TWD Spinoff," and attached a distribution rider and standard terms and conditions. The Deal Memorandum (*see* ECF No. 23-2) indicated that "[e]ach party hereby consents to the jurisdiction of any state or

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

federal court located in the state of New York," *not* arbitration. (*Id.* at 12-13[1] ["Choice of Law"].) The all-caps Choice of Law provision also expressly states that it governs the "Deal Memorandum (*including the exhibits thereto*)." (*Id.* at 12 (emphasis added).) Likewise, AMC's Standard Terms And Conditions, attached as Exhibit B to the 2014 Agreement, provide that "Artist [i.e. Erickson] consents to the jurisdiction" of state and federal courts. (*Id.* at 27 ¶ 16(b).) Nowhere in the multiple pages addressing Erickson's contingent compensation is there a single reference to arbitration or a separate dispute resolution procedure for contingent compensation.

### B.   The 2016 Amendment *Also* Provides for Disputes To Be Resolved in State or Federal Court

In 2016, Erickson signed an amendment to the 2014 Agreement. The 2016 Amendment once again addressed Erickson's contingent compensation. And once again, the parties affirmed that any disputes relating to the agreements would be resolved in state or federal court, not arbitration. (Gellman Decl. **Ex. 1** ["Certificate of Authorship and Deal Memorandum"] at 2.)

Gregg Gellman, Erickson's transactional lawyer who negotiated both the 2014 Agreement and 2016 Amendment with AMC's Scott Stein. At no time during the negotiations of the 2014 Agreement or the 2016 Amendment did AMC ever suggest, in writing or orally, that contingent compensation (a key component of the 2014 and 2016 agreements) would be subject to a completely different dispute resolution provision. (Gellman Decl. ¶ 2.) AMC could have easily included such language in the agreements, but it undoubtedly knew any such language would be rejected. Necessarily, then, Erickson never consented to a conflicting dispute resolution mechanism.

---

[1] All page numbers in docket citations refer to the ECF pagination, not that of the original document.

### C.     AMC's Attempt To Add An Arbitration Requirement in 2022 Was Summarily Rejected by Erickson

As discussed in the Complaint, Erickson grew concerned about impropriety when it became evident from the face of his profit participation statements that the other talent on the Series was receiving profits when he was not. As a result, Erickson retained a litigator and demanded that AMC provide the *Fear TWD* MAGR definition in November 2021, as AMC was obligated to provide it pursuant to the Agreements.[2] (Liskin Decl. ¶ 2; *see, e.g.*, ECF No. 23-2 [2014 Agreement] at 10 ["providing for a 60-day negotiation period "following the date upon which *AMCS first provides* AMCS' MAGR definition to Lender (which delivery shall occur no earlier than the order of the first Series hereunder) …"] (emphasis added).) On February 2, 2022, AMC finally provided what it claimed was the "standard" *Fear TWD* MAGR definition, even though it was entirely different than the definition for the other profit participants on the Series. Buried within the grossly inadequate definition was a new, never-discussed arbitration clause. (*See* ECF No. 23-3 at 17 ¶ III.F.1.)

Not only did the new arbitration provision conflict with the dispute resolution provisions in the 2014 Agreement and 2016 Amendment specifically; it also expressly acknowledges that the main Agreement *controls* in case of any conflict with the Exhibit. (*See id.* at 3 ["To the extent there is a conflict between the provisions of this Exhibit and the provisions of the Agreement with respect to the subject matter hereof, *the provisions of the Agreement will govern*, and this Exhibit will be deemed modified only to the extent necessary to make it conform to the

---

[2] This concern was tempered by Erickson's knowledge that by 2017, it was not just Darabont and CAA litigating with AMC; Kirkman, Hurd and other *Fear the Walking Dead* participants were also litigating with AMC. Thus, Erickson's representatives reasonably believed AMC was simply waiting to provide its definition until it finally had an agreed upon definition with key talent such as Kirkman and Hurd. (Gellman Decl. ¶ 3.)

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

provisions of the Agreement."] (emphasis added).) Even by the draft MAGR Definition's terms, then, the Choice of Law provisions in the *underlying* agreements govern.

For this reason, in March 2022, Erickson's representatives responded to AMC's new arbitration clause by instructing it to "[d]elete Paragraph F in its entirety. This arbitration provision is in direct conflict with the underlying agreement." (Gellman Decl. **Ex. 2**.)

**D.    AMC's Evidence Of Erickson's Purported "Knowledge" of Its "Standard" MAGR Definition Is Based on a *Different* Participant's *Disputed* Definition on a *Different* Show**

If AMC even had a "standard" MAGR definition (including an arbitration clause) on the Series in 2014 or 2016, the studio did not provide it to Erickson. Instead, AMC waited eight years to circulate a draft definition. Now, AMC blames *Erickson* for failing to demand it sooner, even though it was AMC's obligation to provide it (*see* ECF No. 23-2 at 10), much like the Standard Terms and Conditions.

To distract from its own failures, AMC also argues that Erickson should have been aware of the arbitration provision because its "counsel sent AMC's standard MAGR definition to *CAA* on February 22, 2011." (ECF No. 23-1 [Stein Decl.] ¶ 8 (citing *Darabont v. AMC Network Entm't LLC* (N.Y. Sup. Ct., Index No. 650251/2018), Dkt. 145) (emphasis added).) AMC cites, but does not attach, this email, and for good reason: It is an email from AMC's outside counsel to Frank Darabont's transactional lawyer, copying *Frank Darabont's* agent at CAA, not Erickson's. It also fails to cite or attach Darabont's response—for equally good reason: Darabont and CAA ultimately filed two state court actions against AMC (in 2013 and 2018).

AMC's reliance on the February 22, 2011 draft definition is ironic to say the least, because AMC did not even *attempt* to compel either Darabont action to arbitration. *See Darabont, et al. v. AMC Network Entertainment LLC, et al.*, Index

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

No. 654328/2013 (N.Y. Sup. Ct. filed Dec. 17, 2013); *Darabont, et al. v. AMC Network Entertainment LLC, et al.*, Index No. 650251/2018 (N.Y. Sup. Ct. filed Jan. 18, 2018). Nor did it attempt to compel the *Kirkman* state court litigation to arbitration, even though it also sent the *Kirkman* plaintiffs an arbitration agreement to which *they* never agreed. *See Kirkman, et al. v. AMC Film Holdings LLC, et al.*, No. BC672124 (L.A. Super. Ct. filed Aug. 14, 2017). And the Kirkman parties are litigating their MFN case in this very Court, despite having the same or similar arbitration provisions in their MAGR definitions. *See Kirkman v. AMC Film Holdings LLC*, No. 2:22-cv-09101-FLA-AJR (C.D. Cal. filed Dec. 15, 2022) (the "Related Case").[3]

AMC was right then, and it is wrong now. Like Erickson here, neither CAA nor Darabont nor the Kirkman plaintiffs ever *agreed* to be governed by an arbitration provision provided in some later document that was inconsistent with their respective underlying agreements. In every instance, AMC *attempted* to add arbitration provisions after the fact to its talent agreements. And in every instance, the participants rejected an inconsistent arbitration requirement.

But even if it were true that the 2011 email to Frank Darabont's representatives constituted AMC's "standard" MAGR Definition in some metaphysical sense—and it is not—the knowledge of *Darabont's* agent and lawyers cannot be imputed to Erickson's agent and lawyers (at a different firm). Lawyers and agents represent individual clients, and Darabont's agent never provided *his* definition to Erickson's agent or transactional attorney. (Gellman Decl. ¶ 6.) Moreover, the 2011 purported "definition" covered an entirely different series (i.e.,

---

[3] AMC actually attempted to preempt Kirkman's federal case by filing an arbitration in New York, but after Kirkman brought a cause of action in the Related Case to enjoin the arbitration, AMC quickly stipulated to dismiss the arbitration. (*See* AMC Motion To Dismiss, Related Case, ECF No. 18 at 14; Samplin Decl. ISO MTD, Related Case, ECF No. 18-3 ¶ 10.)

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

*The Walking Dead*) and differed dramatically from the draft MAGR definition that AMC provided Erickson in 2022. Not surprisingly, then, AMC never mentioned the 2011 draft Darabont definition to Gellman. (*Id.*) AMC *certainly* did not re-circulate it to Gellman. (*Id.*)

## III.    THE COURT SHOULD DENY AMC'S MOTION

Where, as here, "one party disputes the making of the arbitration agreement, the Federal Arbitration Act requires that the court proceed summarily to the trial thereof before compelling arbitration under the agreement." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (internal quotations and citation omitted). As the party seeking to compel arbitration, AMC bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. *Norcia v. Samsung Telecomm'ns Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). On such a motion, the court may compel arbitration only where there are "no genuine disputes of material fact surrounding the arbitration agreement's existence," with the court drawing "all inferences in favor of the party *opposing* arbitration." *Hill v. Quicken Loans Inc.*, 2020 WL 5358394, at *5 (C.D. Cal. Aug. 5, 2020) (emphasis added); *see generally Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1249 (C.D. Cal. 2016) ("When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party.") (internal quotation omitted).[4]

---

[4] While the Court may examine evidence outside the pleadings on a motion to compel arbitration, *see Regents of Univ. of Cal. v. Japan Sci. & Tech. Agency*, 2014 WL 12690187, at *3 n.24 (C.D. Cal. Oct. 16, 2014) (collecting cases), it may not consider documents whose validity is "contested," *Johnson v. Green Dot Corporation*, 2021 WL 2945533, at *2 (C.D. Cal. Jul. 8, 2021).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

Here, Erickson denies that he ever agreed to arbitrate. AMC's argument that the parties delegated the arbitrability determination to an arbitrator (*see* Mot. at 5-11) thus puts the cart before the horse. The question is not whether Erickson delegated arbitrability disputes to JAMS; it is whether he agreed to arbitration at all. As discussed below, he did not. AMC's motion must therefore be denied.

### A.    The Court, and Not An Arbitrator, Must Decide Whether the Parties Agreed To Arbitrate Disputes Regarding the Series

"A purported arbitration agreement presents a few 'gateway' issues: First, whether an agreement to arbitrate was actually formed. *See Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 634–35 (9th Cir. 2021). Second, whether that agreement is 'valid,' *Bielski [v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023)] …. Third, 'whether the agreement encompasses the dispute at issue.' *Id.*" *Goceri v. Amazon.com, Inc.*, 719 F. Supp. 3d 1060, 1064 (N.D. Cal. 2024). "Normally, these gateway questions are resolved by a court. But parties to an arbitration provision can also enter a separate agreement to arbitrate some of these gateway questions—a 'delegation' provision—as long as the parties '*clearly and unmistakably* provide' that the 'gateway issues ... be expressly delegated to the arbitrator.'" *Id.* (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)) (emphasis in original).

"Not all gateway questions can be delegated, however." *Id.*; *see Ahlstrom*, 21 F.4th at 635 ("DHIM argues that, like issues of validity and arbitrability, parties may also agree to delegate issues of formation to an arbitrator. We do not agree."); *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) ("Although challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator, challenges to the very existence of the contract are, in general, properly directed to the court.") (internal citations omitted). Thus, when a contract purportedly "includes both an arbitration provision and a delegation provision," the party resisting arbitration may still raise "formation challenges to the underlying

arbitration provision," which must be decided by the "reviewing court." *Goceri*, 719 F. Supp. 3d at 1064–65 (citing *Ahlstrom*, 21 F.4th at 635).

Such a challenge is decided based on "general state-law principles of contract interpretation," *without* a presumption in favor of arbitrability. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742–43 (9th Cir. 2014); *see also Winkler v. McCloskey*, 83 F.4th 720, 729 (9th Cir. 2023). "While an agreement to arbitrate can be incorporated by reference, any such reference must clearly show such an intent to arbitrate." *Aerotech World Trade Ltd. v. Excalibur Sys., Inc.*, 654 N.Y.S.2d 386, 387 (App. Div. 1997). As the Supreme Court has explained, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original).

### 1. The Agreements neither include nor incorporate by reference an arbitration provision or delegation clause.

AMC does *not* and *cannot* contend that the only signed agreements (in 2014 and 2016) themselves contain an arbitration provision—let alone one delegating arbitrability to JAMS. Instead, it argues that the *2022* (draft) MAGR Definition was "expressly incorporated by reference into the executed agreement[s]." (Mot. at 1.) Because "there is a legitimate dispute about whether the party opposing arbitration assented to the modification of a contract to add an arbitration clause, it would be improper for a court to robotically compel arbitration based on delegation principles without conducting any independent analysis of the contract-modification issue." *Cornell v. Desert Fin. Credit Union*, 2021 WL 4710173, at *3 (D. Ariz. Oct. 8, 2021). Here, that "independent analysis" must address the threshold issue: whether the Agreements "incorporated by reference" a 2022 draft MAGR Definition that

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

was only sent in response to a request by Erickson's outside *litigation* counsel. To ask the question is to answer it.

"Whether an extrinsic document is deemed to be incorporated by reference is a matter of law." *Sea Trade Co. Ltd. v. FleetBoston Financial Corp.*, 2007 WL 1288592, at *4 (S.D.N.Y. May 1, 2007). Under New York law, "[t]he doctrine of incorporation by reference requires that the paper to be incorporated into the written instrument by reference must be so described in the instrument that the paper may be identified beyond all reasonable doubt." *Kenner v. Avis Rent A Car Sys., Inc.*, 678 N.Y.S.2d 213, 214 (App. Div. 1998) (quotation omitted); *see also PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) ("[T]he paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be *identified beyond all reasonable doubt*.") (emphasis in original). In addition, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Torres v. Major Auto. Grp.*, 2014 WL 4802985, at *7 (E.D.N.Y. Sep. 25, 2014) (internal quotation omitted). *See* 11 *Williston on Contracts* § 30:25 (4th ed.) (the contract must "make[] clear reference to the document and describe[] it in such terms that its identity may be ascertained beyond doubt," and "the parties to the agreement" must have "had knowledge of and assented to the incorporated terms").

> (a)     The 2022 MAGR Definition was not "identified beyond all reasonable" doubt in the 2014 and 2016 Agreements.

"It is common sense that a document not yet in existence" (like the 2022 MAGR Definition) "could not be identified in the [ ] Agreement[s] beyond all reasonable doubt." *Valley Stream Foreign Cars, Inc. v. Am. Honda Motor Co.*, 209 F. Supp. 3d 547, 553 (E.D.N.Y. 2016). In *Valley Stream*, Honda argued that its "Wholesaling Policy [was] incorporated by reference" into "the parties' Dealer Agreement." *Id.* at 552. The Eastern District, applying New York law, held that it was not: "the Dealer Agreement was executed in or about September/October 2003,

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

whereas the revised Wholesaling Policy was adopted in March 2004." *Id.* at 553–54. The same is true here, except the time gap is even more pronounced.

*Valley Stream* is consistent with decisions around the country. For example, in *Gilbert Street Developers, LLC v. La Quinta Homes, LLC*, 174 Cal. App. 4th 1185 (2009), the California Court of Appeal held that "[i]ncorporating the *possibility* of a future rule by reference simply doesn't even meet the basic requirements for a valid incorporation by reference under simple state contract law. Most basically, what is being incorporated must *actually exist at the time of the incorporation,* so the parties can know exactly what they are incorporating." *Id.* at 1194 (emphasis in original). Likewise, a Colorado appellate court was "aware of no precedent holding that parties can clearly know of and assent to contract terms that do not yet exist …." *Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., Inc.*, 251 P.3d 1091, 1095 (Colo. App. 2010) (holding that incorporation of AAA Rules did not "incorporate[] by reference any amendments that the AAA might possibly adopt in the *future* merely by virtue of their reference to the rules") (emphasis added). And West Virgina's high court held that the failure of a retail installment sales contract "to include an arbitration provision or incorporate by reference any *prior* arbitration agreement" was "fatal" to an arbitration demand. *TD Auto Fin. LLC v. Reynolds*, 842 S.E.2d 783, 791 (W.Va. 2020) (emphasis added).

*Valley Stream* is correct—the Agreements did not identify the 2022 MAGR definition "beyond all reasonable doubt."

> (b)    *Erickson could not have "assented" to the terms of the MAGR Definition eight years before AMC provided it.*

"Common sense" also indicates that Erickson could not have "assented to [ ] incorporated terms" that he had not been provided. For example, *Pike Company, Inc. v. Tri-Krete Limited*, 772 F. Supp. 3d 353 (W.D.N.Y. 2025), was a dispute between a contractor for college campus housing project and a subcontractor. The question was whether the "written notice provisions in the Owner Contract were

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

incorporated by reference into either the MSA [Master Subcontract Agreement] or into the Work Order"—both of which "pre-date[d] the Owner Contract." *Id.* at 370. The court thus held that the contractor could not "bind [the sub-contractor] to these conditions retroactively" under New York incorporation by reference law. *Id.* The sub-contractor "could not have known the terms of the Owner Contract and consented to them at the time it entered into either the MSA or the Work Order." *Id.*

The same result follows here: Erickson could not have known of (and assented to) a conflicting arbitration provision in a MAGR Definition that AMC did not attempt to introduce for six or eight more years. As one justice has explained, "Time goes forward …. Likewise, incorporation by reference is unidirectional, that is, it 'occurs in one direction: it pulls material into the incorporating contract.' When parties make a new contract, they can agree to incorporate into the contract terms from another document that already exists. Parties cannot agree to the opposite: they … cannot assent to something that does not exist." *TD Auto*, 842 S.E.2d at 794–95 (Hutchison, J., concurring) (citation omitted). AMC's motion, however, is based on an inversion of the incorporation by reference doctrine.[5]

---

[5] To be sure, "incorporated terms" may sometimes "be decided by one party in the future." *Lamb v. Emhart Corp.,* 47 F.3d 551, 559 (2d Cir. 1995) (applying Connecticut law). But that requires "an ascertainable standard for the promulgation of the new terms that [(1)] is set forth in the original agreement and [(2)] can 'provide a substitute for a present knowledge of and assent to the subsequently adopted provisions.'" *Id.* (quoting *Housing Auth. of City of Hartford v. McKenzie*, 412 A.2d 1143, 1146 (Conn. Super. Ct. 1979)) (brackets added). In *Lamb*, the "substitute" was a restriction that changes to the terms "not affect previously issued options without the permission of the respective option holders" and prohibitions on increasing the number of shares and setting the option price below an agreed floor. *Id.* Even if New York law recognizes a similar exception, the introduction of a never-discussed, conflicting arbitration provision does not fall within it.

30789-00003/935068

19

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

### 2.    None of the delegation cases relied on by AMC are analogous.

Unlike here, in every one of the cases relied by AMC (*see* Mot. at 10-11), the court specifically found that the parties' agreements included a valid arbitration clause with delegation language, if the issue was even disputed.

- In *Brennan*, 796 F.3d 1125, the Ninth Circuit noted that "Brennan ... signed an Employment Agreement with Opus Bank" acknowledging that "section 16 of the Employment Agreement (the Arbitration Clause), entitled 'Dispute Resolution Procedures,' was a mandatory arbitration provision." *Id.* at 1127–28.

- In *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994 (C.D. Cal. 2022), the Plaintiff did not even argue that the arbitration agreement was "invalid"; the only thing she disputed was "*which* valid agreement applies." *Id.* at 1003. The Court did not even need to "resolve which arbitration agreement applies," because both "contain[ed] exactly the same provision binding the parties to an arbitration agreement and delegating questions of arbitrability to the arbitrator." *Id.* (internal citations omitted).

- In *O'Connor v. Warner Bros. Animation, Inc.*, 2021 WL 3598581 (C.D. Cal. Jan. 21, 2021), every week, the parties executed "production deal memo[s] and rider[s] governing the employment. Each deal memo contain[ed] an identical arbitration provision," providing that "'any dispute over the enforceability or validity of this agreement to arbitrate shall be resolved by the arbitrator to the extent permitted by law," under "either the JAMS Streamlined … or the JAMS Comprehensive … Arbitration Rules and Procedures ….'" *Id.* at *1 (internal citations omitted).

- And in *Patrick v. Running Warehouse, LLC*, 2022 WL 10584136 (C.D. Cal. Oct. 18, 2022), the website's "'terms of use' hyperlink [led] to substantively identical Terms," containing "the same 'Choice of Law,

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

Arbitration, and Venue' provision, which provides, in relevant part: …
'All Claims shall be decided by one arbitrator pursuant to this provision and the commercial arbitration rules and procedures of JAMS, Inc.'" *Id.* at *2 (internal citations omitted).

Here, by contrast, the *only* dispute resolution provision in the Agreements provides for litigation in state or federal court. Erickson could not access the exhibit that would later include an arbitration provision, because AMC would not provide it for over a half-decade. The absence of an arbitration provision is critical, as numerous courts have recognized. *See, e.g.*, *Young v. ByteDance Inc.*, 700 F. Supp. 3d 808, 812 n.5 (N.D. Cal. 2023) ("The binding authorities that treat the incorporation of similarly worded arbitral rules as 'clear and unmistakable' evidence of delegation do not hold otherwise. Those cases, unlike this one, involved disputes between parties who had both signed the underlying arbitration agreement.") (citing *Brennan*); *Lenox Corp. v. Blackshear*, 226 F. Supp. 3d 421, 431 n.9 (E.D. Pa. 2016) (noting that cases addressing the incorporation of AAA arbitration rules "do not address the situation where relevant state law dictates that the document referenced was not validly incorporated"); *Cornell*, 2021 WL 4710173, at *3 (distinguishing *Brennan* on the grounds that the Ninth Circuit "took as a given that the parties had formed an agreement to arbitrate," whereas "Plaintiff disputes that precise issue").

In sum, Erickson did not delegate arbitrability disputes to JAMS, because he did not agree to JAMS arbitration in the first place.

**B.      AMC's Interpretation of the Actual Dispute Resolution Provision Leads to Absurd Results—As Its Own Litigation History Demonstrates**

It is axiomatic that arbitration agreements are contracts, which must be "interpret[ed] … under basic principles of contract law." *CollegeStreet Imp. & Exp. (Tianjin) Co. v. TL x HF, LLC*, 777 F. Supp. 3d 238, 250 (S.D.N.Y. 2025) (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("[A] court must hold a party

to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation.... The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.")). A foundational tenet of common law contracts is that absurd results are to be avoided. *See, e.g.*, *Greenwich Capital Fin. Prods., Inc. v. Negrin*, 74 A.D.3d 413, 415 (App. Div. 2010) (noting that "a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties") (internal quotation marks omitted).

AMC's interpretation, however, is absurd. If Erickson can be compelled to arbitrate on the basis of a MAGR Definition he never even saw, then there is no limit to what claim he could be compelled to arbitrate. AMC's "reverse incorporation" argument "leads to an absurd, theoretical possibility: that [Erickson] would be obligated to arbitrate any claim arising out of any subsequent transaction or relationship regardless of how attenuated in time or subject matter." *TD Auto*, 842 S.E.2d at 791 n.8; *see McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 277 (S.D.N.Y. 2021) (denying motion to compel based on so-called "infinite arbitration clause" which, if "enforced according to its terms … would seem to mandate arbitration of any claim between the parties, including those without any nexus whatsoever to the agreement containing the clause"). At a minimum, it is absurd to suggest that Erickson, by "consent[ing] to the jurisdiction of any state or federal *court* located in the state of New York" in connection with any dispute related to the "deal memorandum"[6] was *actually* agreeing to mandatory arbitration. It makes no difference that the MAGR definition attached to Stein's declaration describes itself as an "exhibit" to the agreements. The underlying agreement made clear that the

---

[6] "Deal memorandum" refers to the "Deal Summary" attached as Exhibit A to the Certificate of Authorship. (*See* ECF No. 1-2 [Compl.] Ex. 1 at 25-34.)

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

dispute resolution provision covered both the underlying agreements *and* any exhibits thereto.

This is not just Erickson opining. This is consistent with AMC's own litigation conduct of three separate *Walking Dead* litigations. In every such case, AMC could have, but did not, seek to compel arbitration on the exact same theory it espouses here—namely, that the arbitration provision in a later-provided, never agreed-upon MAGR Definition trumped the dispute resolution provision in the underlying (executed) agreement.

The "practical interpretation of the contract by one party [e.g., AMC], evidenced by his words or acts, can be used against him on behalf of the other party" (e.g., Erickson) even where, *unlike* here, "that other party had no knowledge of those words or acts when they occurred." *CBS Corp. v. Northrop Grumman Corp.*, 53 F. Supp. 2d 629, 631 n.1 (S.D.N.Y. 1999) (quoting *Corbin on Contracts* (1960) § 558); *Caleb & Co. v. E.I. DuPont De Nemours & Co.*, 624 F. Supp. 747, 750 (S.D.N.Y. 1985) (quoting the same section of *Corbin on Contracts*).

Thus, for example, the Southern District of New York held that a party's "prior conduct with regard to the declaration of shipments [was] relevant to the question of [its] or [its parent company's] own understanding of the insurance policy's coverage terms" under the same principles. *Buckeye Cellulose Corp. v. Atl. Mut. Ins. Co.*, 643 F. Supp. 1030, 1041 n.41 (S.D.N.Y. 1986). The same court also found that press releases issued by plaintiff constituted the "most significant" extrinsic evidence for interpreting an ambiguous "prompt payment" requirement against it, because they reflected a "contemporaneous interpretation" of its contractual obligations that contradicted its subsequent interpretation in litigation. *See Caleb & Co.*, 624 F. Supp. at 749–50.

Here, regardless of whether AMC has technically *waived* application of the arbitration provision by its conduct in other litigation, *see Buckeye*, 643 F. Supp. at 1041 n.41 (noting that "waiver" was a "different matter" from the party's "own

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

understanding" of the contract terms at issue), it is certainly relevant to the Court's interpretation of facially conflicting dispute resolution provisions. And it indicates that AMC *knows* the later-provided arbitration provision cannot—and does not—trump the only dispute resolution to which its participants ever actually agreed.

### C.  The Arbitration Clause Cannot Be Enforced for Another Reason: If It Became Part of the Agreements, It Was Procured by Fraud

Finally, even assuming that the MAGR Definition was incorporated by reference into the Agreements—and it was not—the arbitration provision is unenforceable, because it was the product of fraud.

"Like other contracts, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Segui v. Solar Mosaic, LLC*, 802 F. Supp. 3d 545, 559 (S.D.N.Y. 2025) (internal quotation omitted); *see, e.g.*, *Simmons v. SUNco Capital, LLC*, 2025 WL 711724, at *4 (E.D.N.Y. Mar. 5, 2025) (denying a pre-discovery motion to compel arbitration, on the grounds that there were "questions of material fact as to whether plaintiff actually signed the loan agreement [containing an arbitration clause] and whether she knew the nature of the document she was signing"). Under the FAA, while a claim for "fraud in the inducement of the arbitration clause itself" may be adjudicated by the court, a federal court may not "consider claims of fraud in the inducement of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). In other words, the plaintiff must establish that the arbitration provision itself was the product of fraud.

An arbitration clause is not enforceable if it was "inserted into the contract in order to effect [a] fraudulent scheme." *Info. Sciences, Inc. v. Mohawk Data Science Corp.*, 56 A.D.2d 706, 706–07 (App. Div. 1977) (citing *Moseley v. Electronic*

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

*Facilities*, 374 U.S. 167 (1963)).[7] Here, to the extent Erickson can be said to have "agreed" to any part of the draft MAGR Definition, AMC fraudulently induced his agreement to the arbitration provision therein by failing to disclose its intent to add a conflicting dispute resolution provision years later. In New York, "[p]roof of fraud requires a showing of either an affirmative misrepresentation of a material fact, or an omission of a material fact coupled with a duty of disclosure." *Law Enf't Sys., Inc. v. Am. Express Co.*, 2006 WL 2034435, at *3 (E.D.N.Y. July 17, 2006) (internal quotation omitted). For example, the party seeking arbitration could "in some way have prevented or dissuaded the other party from becoming aware of the existence or meaning of the arbitration clause." *Rosen v. Waldman*, 1993 WL 403974, at *3 (S.D.N.Y. Oct. 7, 1993). Or the party seeking arbitration could have "superior knowledge of essential facts," thereby triggering a duty to disclose. *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 327 (App. Div. 1996) ("Under the 'special facts' doctrine, a duty to disclose arises 'where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair.'").

Notably, there is no reasonable dispute that an arbitration provision is a material term. In *Fairfield-Noble Corp. v. Pressman-Gutman Co.*, 475 F. Supp. 899 (S.D.N.Y. 1979), like here, the parties never "discussed the question of arbitration." Rather, "the question of arbitration first appeared on defendant's forms," leading the Southern District con conclude that "the arbitration provision, unilaterally inserted by the defendant, was a *material alteration of the contract* and accordingly did not become a part thereof." *Id.* at 902–03. Similarly, in *S & T Sportswear Corp. v. Drake Fabrics, Inc.*, 190 A.D.2d 598 (App. Div. 1993), the oral agreement at issue "did not mention arbitration," and the party resisting arbitration (like Erickson) did not sign the later "draft sales contracts which included an arbitration clause." *Id.* at

---

[7] The appellate division found no such scheme because the arbitration clause was in the original contract and had not been modified by any addendum.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

598. Because "the addition of an arbitration clause to an oral agreement is considered a material alteration that must be 'explicitly' agreed to by the parties," and they had not so agreed, the court affirmed the trial court decision staying arbitration. *Id.* (citing *Matter of Marlene Indus. Corp. v. Carnac Textiles, Inc.,* 380 N.E.2d 239, 242 (N.Y. 1978)).

Here, "AMC never requested that Erickson agree to arbitrate any type of disputes, let alone provide any language to that effect." (Gellman Decl. ¶ 2.) If it intended to add it after-the-fact, this was a fact uniquely within AMC's knowledge, as would support a claim for fraudulent inducement of the arbitration provision itself (as distinct from the contract). *See Legacy Cap. 26, LLC v. Chaldean Enter., LLC,* 2023 WL 5530307, at *2 (S.D.N.Y. Aug. 28, 2023) (holding that evidence of the chosen arbitration fora's extensive relationship with the plaintiff and its counsel "could lead to the conclusion that Plaintiff had the kind of 'superior knowledge'" triggering a duty to disclose "before inducing Defendants to sign the arbitration clause") (citation omitted).

Nor was Erickson ever *shown* the arbitration clause in the "contract" (Gellman Decl. ¶¶ 2-3)—because the MAGR Definition was not provided until litigation counsel requested one (Liskin Decl. ¶ 2). This was the first time either Erickson had ever seen the MAGR Definition, including the arbitration provision therein. (Gellman Decl. ¶ 5.) If AMC had requested an arbitration provision when the parties were negotiating, Gellman would have never agreed, because he was aware that similar claims were being litigated in state court. (Gellman Decl. ¶ 2.)

This is exactly the sort of conduct that the Supreme Court recognized would support invalidating an arbitration provision: the "insertion … of an arbitration clause requiring arbitration of disputes in New York" notwithstanding the plaintiff's preexisting right to sue in federal court. *Moseley*, 374 U.S. at 171; *see Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d 655, 667 (2d Cir. 1997) ("In *Moseley,* the challenged arbitration clause allowed the contractor to circumvent the

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

provisions of the Miller Act, which expressly granted a cause of action to plaintiffs to sue in federal court in the district in which the contract was performed, which was in Georgia and not in New York.").[8]

More generally, if AMC had truly intended in 2014 (or 2016) to bind Erickson to arbitrating disputes over MAGR—a major form of compensation under the Agreement—it needed to negotiate for arbitration in the underlying agreements. The Agreements not only discussed Erickson's contingent compensation at length; they also addressed AMC's *future* obligation to deliver (and negotiate) the MAGR definition. But instead of obtaining, or even *requesting*, an arbitration provision, or disclosing that the MAGR definition *would* contain a JAMS arbitration provision, AMC lied in wait for eight years. That speaks to either the absence of any "agreement" or AMC's fraudulent intent. Either way, there is no valid arbitration provision.

## IV.    CONCLUSION

Much to AMC's chagrin, the incorporation by reference doctrine does not recognize or allow for time travel. Erickson's 2014 Agreement and 2016 Amendment did not incorporate an arbitration provision first provided six to eight years later. AMC—which was actively litigating MAGR disputes in state court in 2014, 2016 and beyond—cannot be permitted to sneak in a different dispute resolution requirement for Erickson in 2022. Its motion should be denied.

---

[8] The Second Circuit distinguished *Moseley*, because the parties had "negotiated the contract in Italy," using "Italian counsel," and then "separately negotiated each of the amendments, *including the arbitration clause*"; "thus, they agreed to arbitration in Italy." *Campaniello*, 117 F.3d at 667 (emphasis added). Here, by contrast, AMC added a conflicting arbitration provision five years after the original agreement permitting state or federal court litigation.

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

DATED:  February 27, 2026

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP

By: _____
Aaron C. Liskin
Attorneys for Plaintiff Squarehead Pictures, Inc. f/s/o David Erickson

## Certificate of Compliance

The undersigned, counsel of record for Plaintiff Squarehead Pictures, Inc. f/s/o David Erickson, certifies that this brief contains 6,481 words, which complies with the word limit of L.R. 11-6.1.

DATED:  February 27, 2026          KINSELLA HOLLEY ISER KUMP
                                    STEINSAPIR LLP


                                    By: _____
                                         Aaron C. Liskin
                                         Attorneys for Plaintiff Squarehead Pictures,
                                         Inc. f/s/o David Erickson

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

30789-00003/935068

29

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION